## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| ANDREA L. BRYANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:16-cv-0932-DKL-TWP |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

*Entry on Judicial Review*

Plaintiff Andrea L. Bryant seeks judicial review under 42 U.S.C. § 405(g) of the Commissioner's decision regarding her claims for disability insurance benefits and supplemental security income.  For the following reasons, the Commissioner's decision will be affirmed.

*Background*

In July 2012, Bryant filed an application for a period of disability and disability insurance benefits and also filed an application for supplemental security income, alleging disability beginning June 13, 2010.

The Administrative Law Judge (ALJ) held a hearing in June 2014.  Bryant; a licensed clinical psychologist, Dr. James Brooks; a physician, Dr. James McKenna; and a vocational expert all testified at the hearing.  Dr. McKenna stated that Bryant had two complications from a traumatic brain injury, a seizure focus and post-concussion headaches.  [R. 42.]  The post-concussion headaches had abated within about one year.

[*Id.*]  He said that she subsequently developed headaches that appeared to be stress-related.  [R. 42.]  Dr. McKenna stated that within a year of her brain injury, Bryant had improved physically to the point where she was able to perform a level of light work with standard seizure limitations, but she still had some cognitive/mental functional problems.  [R. 43-45.]

Dr. Brooks testified that he had reviewed the medical evidence in the record. Bryant had a neuropsychological evaluation about two years after her accident, in May 2012.  [*See* Admin. R., Ex. 21F, R. 800-803.]  The examiner, Donald C. Layton, Ph.D., a licensed psychologist and neuropsychologist, diagnosed Bryant with memory loss and cognitive disorder not otherwise specified [R. 803], which Dr. Brooks said referred to memory functions.  [R. 47.]  Bryant performed in the borderline and low average ranges on intelligence testing.  [R. 801.]  Her higher executive abilities were impaired.  [R. 803.] Dr. Layton opined that Bryant would have difficulty with complex decision-making and that she was mildly impaired in sustained attention and concentration.  [R. 802.]  He wrote that her impairments may be permanent because it had been approximately two years since the brain injury.  [R 803.]  He also wrote that "it would not be surprising to learn that she would have difficulty performing any type of reasonable gainful employment. Perhaps she might consider applying for Social Security Disability assistance at this point."  [*Id.*]  Dr. Brooks testified that two years was the general timeframe within which you would expect improvements to occur, but improvement can occur after that.  [R. 47-48.]

Floyd F. Robison, Ph.D., conducted another psychological evaluation of Bryant in October 2013. [R. 859-865.] He concluded that "[t]he cognitive portion of the mental status examination revealed limited performance on recent memory[;]" however, "executive and language functions were within normal ranges" and "[i]ntellectual performance was estimated to be average." [R. 862.] Dr. Brooks testified that in prior testing, Bryant's IQ scores were "much lower." [R. 49.] Dr. Robison found Bryant's "[r]eported and observed emotional and behavior disturbances were consistent with a major depressive disorder" and he diagnosed Major Depressive Disorder, Single Episode, Mild to Moderate. [R. 862.] Although Bryant's memory was somewhat limited, Dr. Robison did not diagnose a cognitive disorder, and Dr. Brooks testified that all her "executive functions," meaning language, memory, concentration, attention, etc. were within normal limits. [*Id.*; see also R. 48-49.] Dr. Brooks testified that Bryant met a listing for cognitive disorder, Listing 12.02, between the onset date of June 13, 2010, and the most recent psych evaluation of October 28, 2013. [*Id.*] He did not think the depression symptoms were at a listing level, however. [*Id.*]

According to Dr. Brooks' testimony, during the closed period of time from June 13, 2010 to October 28, 2013, Bryant's activities of daily living and cognitive functioning were markedly limited, her social functioning was moderately limited, and there was no evidence of decompensation. [*Id.*] After October 28, 2013, however, Dr. Brooks said that Bryant's activities of daily living and social functioning were mildly limited and her cognitive functioning was moderately limited, and there was no evidence of decompensation, so she no longer met a listing. [R. 50.]

3

In April 2014, Bryant's treating neurologist Dr. Kenton Woolhiser, M.D., completed a one-page questionnaire regarding Bryant's ability to do work-related activities. [R. 1009.] He opined that Bryant suffered from cognitive difficulties, impaired memory, poor concentration, chronic headaches, and epilepsy and described her prognosis as "fair." [*Id.*] He wrote that as a result of her impairments, Bryant would likely be absent from work more than four days per month. [*Id.*] Dr. Brooks testified, however, that the recent psych evaluation did not support that opinion. [R. 51.]

Bryant stated that she felt she was still limited in terms of memory and that she repeats things, forgets things, and gets distracted. [R. 52-54.] She said that she had a lot of things going on in her life involving her ex-husband and children that caused her stress. [R. 54, 57.] Her seizures were controlled. [*Id.*] She continued to have "terrible" headaches, but they were generally controlled with medication. [R. 56-57.] She did not think her depression affects her ability to work; she works part-time as a hair stylist. [R. 57-58.] She said anxiety causes sleep difficulties. [R. 61.]

The ALJ found that Bryant became disabled on June 13, 2010, and that she had not engaged in substantial gainful activity since that date. [R. 21.] He further found that she was under a disability from June 10, 2010 through October 28, 2013, and that during that time period, she had severe impairments of a cognitive disorder, status post, traumatic brain jury; a seizure disorder; post-concussive headaches; and a depressive disorder. [R. 21, 23.] According to the ALJ, she also met the criteria for a listed impairment (Listing 12.02) during that time. [*Id.*]

4

The ALJ determined that Bryant's current severe impairments were the same as those she had during the closed period, but that beginning October 29, 2013, she has not had an impairment or combination of impairments that meets or medically equals a listing.  [R. 23.]  The ALJ found that Bryant had medical improvement as of October 29, 2013, and no longer met or equaled the severity of a listing.  [R. 24.]  He determined that beginning on that date, Bryant has had the residual functional capacity to perform a limited range of light work.  [R. 25.]  Given her age, education, work experience, and residual functional capacity, and based on the vocational expert's testimony, the ALJ found that Bryant could perform jobs existing in significant numbers in the national economy.  He therefore concluded that her disability ended October 29, 2013.  [R. 31.]

*Discussion*

In seeking judicial review, Plaintiff argues the ALJ's determination that she was no longer disabled after October 29, 2013, is not supported by substantial evidence.  More specifically, she argues that her treating neurologist Dr. Woolhiser and examining neuropsychologist Dr. Layton determined that she was totally and permanently unable to work and the ALJ erred in rejecting their opinions.  She claims that the ALL acted as his own medical expert in second-guessing and rejecting these opinions.[1]

The Court determines whether the ALJ's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Stepp v. Colvin*, 795

---

[1]  Perfunctory and undeveloped arguments are waived.  *See, e.g.*, *Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").  Plaintiff's arguments fall into this category; nonetheless, the Court addresses them.

F.3d 711, 718 (7th Cir. 2015); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).  The Court does not reweigh the evidence, resolve conflicts in the record, make credibility determinations, or substitute its own judgment for that of the ALJ.  *See Stepp*, 795 F.3d at 718; *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  An ALJ need not mention every piece of evidence, *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012), but must build an accurate and logical bridge from the evidence to his conclusions.  *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

The ALJ did not act as a medical expert in weighing the opinions of Dr. Woolhiser and Dr. Layton.  Rather, the ALJ weighed the medical opinions and properly decided to give significant weight to the testimony of the impartial medical expert Dr. Brooks as his testimony was well supported and consistent with substantial evidence in the record.  As the ALJ noted, the ultimate issue of whether a claimant is disabled is reserved to the Commissioner and her designate the ALJ.  [R. 25.]  In addition, as the ALJ also noted, treating sources may overstate their patient's limitations in an effort to assist her, and consulting examiners lack a longitudinal relationship or the opportunity to review the record.  [*Id.*]  Furthermore, Dr. Woolhiser's opinion that Bryant would miss four work days per month is, as the ALJ described it, "brief" and "conclusory."  [R. 30]  And as Dr. Brooks testified, after October 28, 2013, there was a lack of corroborating evidence for Dr. Woolhiser's opinion.  Moreover, Dr. Woolhiser's opinion was inconsistent with his own neurological examination findings and treatment notes from April 18, 2014, just a few days before he filled out the questionnaire; the notes indicate that Bryant was "alert and oriented" and had no impairment of recent or remote memory.  [R. 30 (citing Ex. 28 F at

4); R. 994-1008.]  Thus, the ALJ reasonably decided to give Dr. Woolhiser's opinion little weight.

In addition, Dr. Brooks' testimony was consistent with Dr. Robison's statement from October 2013, and the opinions of the state agency psychological consultants.  [See R. 22, 23 28-29 (noting the consultants found mild restriction in activities of daily living, mild difficulties in maintaining social functioning, and moderate limitation in maintaining concentration, persistence, or pace)] as well as with Dr. Robison's findings and opinions to which the ALJ gave "great weight."  [R. 29.]  The ALJ's decision does not expressly mention Dr. Layton's statement that Bryant may have difficulty performing reasonable gainful employment and should consider applying for social security, but an ALJ's written decision need not cite every bit of evidence in the record.  *See, e.g.*, *Arnett*, 676 F.3d at 592.  Furthermore, Dr. Layton's opinion about Bryant's inability to work does not constitute a "medical opinion" but an opinion on an issue reserved to the Commissioner and thus is not entitled to any special significance.  *See Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001); 20 C.F.R. § 404.1527(a)(2), (d).  The ALJ gave a reasoned explanation, grounded in the evidence, for the weight given to the medical opinions.

The Court finds that the ALJ's decision is supported by substantial evidence and the ALJ applied the correct legal standards.  Therefore, the Commissioner's decision will be affirmed.

DATED:  3/22/2017

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Electronic distribution to counsel of record